FILED NOV - 4 2005

| | |
|---|---|
| MEDICAL RESEARCH INSTITUTE, INC., a California Corporation,<br><br>Plaintiff,<br><br>v.<br><br>UNLIMITED NUTRITION, INC., a North Carolina Corporation, and MICHAEL MCCANDLESS, an individual, d/b/a BULK NUTRITION, 1FAST400, GOENDURANCE, BEYOND MUSCLE, and NUTRITION STAND<br><br>Defendants. | COMPLAINT FOR TRADEMARK INFRINGEMENT, FALSE DESIGNATION OF ORIGIN, FALSE ADVERTISING, TRAFFICKING IN COUNTERFEIT GOODS, AND RELATED CLAIMS<br><br>**1:05CV00970** |

Plaintiff MEDICAL RESEARCH INSTITUTE, INC. ("MRI") alleges as follows:

This is an action for federal trademark infringement, false designation of origin, and trafficking in counterfeit goods arising from Defendants' unauthorized acquisition, sale, and distribution of counterfeit copies of MRI's ingestible nutritional supplements.

### THE PARTIES

1. Plaintiff Medical Research Institute, Inc. ("MRI") is a California Corporation having its principal place of business in San Francisco, California. MRI develops and markets proprietary and novel products for health conscious individuals, high performance athletes, and fitness enthusiasts. MRI's products are commonly known by the category name nutritional supplements or "nutraceuticals."

2. Defendant Michael McCandless is engaged in business at 1130 Cherry Lane, Graham, North Carolina, selling nutritional supplements. Upon information and belief,

Defendant McCandless conducts business under various fictitious names, including Bulk Nutrition, Unlimited Nutrition, 1Fast400, GoEndurance, Beyond Muscle, and Nutrition Stand and sells products through the websites www.bulknutrition.com, www.1fast400.com, www.goendurance.com, www.beyondmuscle.com, www.nutritionstand.com, and at industry trade shows nationwide.

3. Defendant Unlimited Nutrition Inc. ("UNI") is a North Carolina corporation having its principal place of business in Graham, North Carolina. Upon information and belief, Unlimited Nutrition is controlled by, and is the alter ego of, Defendant McCandless. Upon further information and belief, Defendant McCandless was involved with and/or responsible for and profited or otherwise benefited from the illegal activities of Defendant UNI complained of herein.

## JURISDICTION AND VENUE

4. Federal jurisdiction is conferred on this Court by 28 U.S.C. §§ 1331 and 1338, as this action arises under the Lanham Act, 15 U.S.C. § 1051 et. seq.

5. Pursuant to 28 U.S.C. § 1367, the Court has supplemental jurisdiction over MRI's state law claims.

6. Venue is proper in this Court under 28 U.S.C. § 1391(b)(2), as a substantial part of the events or omissions giving rise to the claims occurred within this judicial district and the Defendants reside in this district.

## STATEMENT OF FACTS

### Medical Research Institute, Inc. ("MRI")

7. MRI was formed in 1996 to research and develop innovative natural supplements with cutting edge controlled released technology for the purposes of enhancing muscle development and athletic performance. MRI owns an elite portfolio of products that make it the

2

recognized leader in nutraceutical science. Among other products, MRI designed, developed, and currently manufactures two innovative products known as CE2 and NO2.

8.  MRI's CE2 nutritional supplement is a creatine ethyl ester hydrochloride compound marketed to performance athletes looking for improved strength and endurance. Although creatine has been on the market for approximately 12 years, CE2 contains a new, innovative rapid absorption creatine delivery system called ESTER-TECH, designed to mitigate the side effects of more traditional creatine products and increase the absorption rate of creatine. CE2 comes in caplet form and is designed to be directly ingested by the user. MRI owns a U.S. Trademark Registration for CE2, Reg. No. 2,990,412, a true and correct copy of which is attached hereto as Exhibit A. MRI owns a U.S. Trademark Registration for ESTER-TECH, Reg. No. 3,007,938, a true and correct copy of which is attached hereto as Exhibit B. MRI has also filed a patent for CE2, which is pending in the U.S. Patent and Trademark Office.

9.  MRI's NO2 nutritional supplement has created a novel new category of muscle developers. With its advanced sustained-release technology "PHYLEX-9," NO2 is a safe product that has been deemed to help improve blood flow, strength, and general conditioning primarily for athletes. Like CE2, NO2 comes in caplet form and is designed to be directly ingested by the user. Recently, NO2 was awarded the safety certification seal from the National Foundation of Science. MRI owns a U.S. Trademark Registration for NO2, Reg. No. 2,779,677, a true and correct copy of which is attached hereto as Exhibit C. MRI was awarded a patent for the PHYLEX-9 sustained release technology. A true and correct copy of Patent No. 6,905,707 is attached hereto as Exhibit D.

10.  MRI's NO2 and CE2 products are currently sold in the United States only through MRI's website at www.mrihq.com and through a semi-exclusive supply contract with General

3

Nutrition Centers (GNC). GNC is one of the largest retail distributors of vitamins, nutritional supplements, and related personal health care products worldwide, with over 4,800 retail outlets in the United States.

11. MRI's success is directly attributable to the quality of its products and its reputation and goodwill associated with its brand and trademarks. MRI invested substantial amounts of time, energy, and money in the development and promotion of its NO2 and CE2 products. MRI invested several million dollars alone in the last two years advertising and promoting its NO2 and CE2 products.

12. MRI substantially and continuously used its MRI mark since beginning business in 1996. MRI substantially and continuously used its NO2 mark since first launching the product in March 2002. MRI substantially and continuously used the PHYLEX-9 mark since July 2004. MRI substantially and continuously used its CE2 and ESTER-TECH marks since launching the CE2 product in March 2005. MRI, NO2, CE2, PHYLEX-9, and ESTER-TECH will hereinafter be referred to, collectively, as the "MRI Marks."

13. To distinguish MRI's products from those made and sold by others, MRI prominently displayed the MRI Marks on its goods, in advertising and direct marketing materials, at industry trade shows, and in sports fitness periodicals distributed throughout the United States. The MRI Marks have come to identify MRI as the source of innovative nutritional supplements developed and manufactured by MRI.

**Defendants' Infringement and Piracy**

14. Defendants have never at any time been under contract or license to sell, offer for sale, advertise, or handle any of MRI's nutritional supplement products.

4

15. On or about December 2004, Plaintiff learned that Defendants were selling an "NO2" product through the website www.bulknutrition.com.

16. Plaintiff obtained a bottle of the "NO2" product sold on Defendants' website. Defendants' bottle and packaging looked nearly identical to an authentic NO2 product, except that the MRI logo was much blurrier and the height of the red line at the top of the label was much higher. The label and bottle were not authentic MRI products. In addition, the caplets inside Defendants' counterfeit NO2 bottle looked very similar to authentic NO2 caplets. However, laboratory analysis disclosed that the caplets were not authentic NO2 caplets.

17. Whereupon, Plaintiff contacted Defendant McCandless and demanded that he cease and desist selling all counterfeit MRI NO2 product. Defendant McCandless denied knowing that the product was counterfeit and denied knowing the source of the counterfeit product, but agreed to stop selling the counterfeit product.

18. Any cessation of the counterfeit sales by Defendants was short lived. On or about October 14 – 16, 2005, Plaintiff hosted a booth at the Exposition for the Mr. Olympia Bodybuilding Competition in Las Vegas, Nevada ("Competition Expo"), showcasing products, including counterfeit NO2 and CE2.

19. During that weekend, Plaintiff learned that Defendants were also hosting a booth at the Competition and that Defendants were selling nutritional supplements that purported to be MRI's NO2 and CE2 products, but were not. Each product had counterfeit labels displaying the MRI, NO2, CE2, PHYLEX-9 and ESTER-TECH trademarks. Comparisons of the counterfeit labels are attached hereto as Exhibit E.

20. Also, on or about October 2005, Plaintiff became aware that Defendants were once again selling nutritional supplements that purported to be MRI's NO2 and CE2 products on

5

the websites www.bulknutrition.com, www.1fast400.com, www.goendurance.com, www.beyondmuscle.com, and www.nutritionstand.com. These products also displayed the MRI, NO2, CE2, PHYLEX-9 and ESTER-TECH trademarks.

21. Based on the information from laboratory analysis, its investigation subsequent to these events, and its review of the products purchased from both the Competition Expo and from Defendants' Bulk Nutrition website, Defendants are selling counterfeit "NO2" and "CE2" products. Further, upon information and belief, Defendants act in concert with others to copy MRI's trademarks, sell counterfeit nutritional supplements as if they were authentic MRI products, and do so knowingly and willfully.

22. Defendants engaged in their piracy with the intent to infringe MRI's federally registered and common law trademarks. Defendants further engaged in their piracy to traffic in counterfeit products with the intent to commercially exploit MRI's federally registered and common law trademarks and trade dress for their own economic advantage. Defendants' deceive consumers into believing that Defendants' products were genuine MRI products or that they were sponsored by or affiliated with MRI in a manner authorized by MRI. Defendants contributorily infringed by knowingly facilitating a distribution network for counterfeit product and profiting from that distribution effort.

23. Defendants pass off their counterfeit NO2 and CE2 products as if they were genuine MRI products in a manner calculated to deceive MRI's customers and members of the general public. Defendants' counterfeit products utilize the MRI Marks and trade dress and imitate the artwork used on the authentic NO2 and CE2 product labels, in an obvious effort to make the Defendants' counterfeit products confusingly similar to MRI's.

6

24. The natural, probable, and foreseeable result of Defendants' conduct has been, and will continue to be, to deprive MRI of its exclusive control over the use of its trademarks and of the benefits of selling and licensing its products utilizing the MRI Marks. Defendants' conduct further deprives MRI of its consumer goodwill and injures MRI's relations with present and prospective business partners and consumers. Moreover, the deceived consumers who purchase the counterfeit products are receiving an ingestible product which is not manufactured to MRI's strict quality and safety specifications, for which there is no warranty protection or consumer redress, and which is inferior to MRI's authentic products.

25. MRI is informed and believes that it lost and will continue to lose revenues from Defendants' sale of counterfeit products displaying or embodying its trademarks, and will sustain substantial damages as a result of Defendants' conduct and sale of infringing counterfeit products. Defendants' wrongful conduct deprived and will continue to deprive MRI of opportunities for expanding its goodwill.

26. MRI is informed and believes that unless enjoined by this Court, the Defendants intend to continue their course of conduct and to wrongfully counterfeit, use, infringe upon, sell, and otherwise profit from exploiting the MRI Marks. As a direct and proximate result of the acts of the Defendants as alleged above, MRI suffered irreparable harm and sustained damages in an amount to be proven at trial. MRI has no adequate remedy at law to redress all of the injuries that the Defendants caused and intends to cause by their conduct. MRI will continue to suffer irreparable harm until Defendants' actions, as set forth above, are enjoined by this Court.

7

## COUNT I
## TRADEMARK INFRINGEMENT
## 15 U.S.C. § 1114(1)(A)

27. Plaintiff incorporates by reference and hereby reallages, as fully set forth herein, each of the preceding paragraphs of this Complaint.

28. Plaintiff's NO2, CE2, and ESTER-TECH marks are well and favorably known throughout the United States, as indicators of source and origin. Consumers associate the NO2, CE2, and ESTER-TECH marks with goods and merchandise sold by MRI, rather than by any other source. The NO2, CE2, and ESTER-TECH marks also embody and symbolize the positive goodwill and reputation of MRI, which MRI nurtured, developed, and cultivated over many years of doing business in the United States. MRI spent tremendous resources to establish its trademarks as a source of high quality and distinctive products in the minds of consumers.

29. Defendants are deliberately engaging in piracy by selling, offering to sell, and distributing goods bearing marks that are identical to or confusingly similar to the NO2, CE2, and ESTER-TECH marks in an effort to profit from the success of MRI's efforts to develop and promote its NO2 and CE2 products. Defendants used the NO2, CE2, and ESTER-TECH marks in commerce and MRI alleges, on information and belief, that consumers have been, and are likely to be confused by Defendants' misleading and deceptive uses of these marks. MRI has no control over the quality or safety of the products distributed by Defendants bearing the NO2, CE2, and ESTER-TECH marks, and therefore, MRI's valuable goodwill is imperiled at the mercy of Defendants and their counterfeit products. The Defendants' piracy is an effort to ride MRI's reputation and coattails to confuse and deceive consumers into believing that the products sold by Defendants are sponsored by, authorized by, or endorsed by MRI.

8

30. Defendants' use of the NO2, CE2, and ESTER-TECH marks to sell nutritional supplements constitutes infringement of MRI's federally registered marks in violation of Section 32 of the Lanham Act, 15 U.S.C. § 1114(1)(a), and use of counterfeit marks in violation of § 1116.

31. Defendants' acts described above irreparably injure MRI's business, reputation, and goodwill.

32. Defendants' conduct, as described above, constitutes willful infringement under Section 35 of the Lanham Act, 15 U.S.C. § 1117.

33. As a direct and proximate result of Defendants' actions, MRI suffered, and will continue to suffer, irreparable harm for which it has no adequate remedy of law. As a result of Defendants' actions, MRI requests a temporary restraining order, a preliminary injunction, and ultimately a permanent injunction enjoining and restraining Defendants and their agents, directors, officers, employees, and all those persons acting or attempting to act in concert with them from further infringement of the federally registered NO2, CE2, and ESTER-TECH marks.

34. Defendants' actions are intended to exploit the goodwill and reputation associated with the NO2, CE2, and ESTER-TECH marks and to gain market share without the expenditure of their own resources. As a result of Defendants' actions, MRI suffered, and will continue to suffer, money damages in an amount to be proven at the time of trial.

35. MRI is further entitled to recover from Defendants the damages, including attorney fees and costs and enhanced damages, it has suffered and will suffer, and any gains, profits, and advantages obtained by the Defendants as a result of their acts of infringement, alleged above. At present, the amount of such damages, fees, costs, gains, profits, and advantages cannot be fully ascertained by MRI, but will be proven at the time of trial.

## COUNT II
## FALSE DESIGNATION OF ORIGIN AND FALSE ADVERTISING
## 15 U.S.C. § 1125(A)

36. Plaintiff incorporates by reference and hereby reallages, as fully set forth herein, each of the preceding paragraphs of this Complaint.

37. Defendants' unauthorized use of the MRI Marks and trade dress and their false and misleading references to the MRI Marks in connection with the sale of their products constitutes a false designation of origin and false representation in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a). Defendants' use of the MRI Marks and trade dress in connection with their counterfeit products is likely to, and on information and belief, has caused confusion as to the origin, sponsorship, or approval of Defendants' products by MRI.

38. Defendants' actions as described above also constitute false and misleading advertising in violation of 15 U.S.C. § 1125(a).

39. Defendants' conduct as described above constitutes willful infringement under Section 35 of the Lanham Act, 15 U.S.C. § 1117.

40. As a direct and proximate result of Defendants' actions, MRI suffered, and will continue to suffer, irreparable harm for which it has no adequate remedy of law. As a result of Defendants' actions, MRI requests a temporary restraining order, a preliminary injunction, and ultimately a permanent injunction enjoining and restraining Defendants and their agents, directors, officers, employees, and all those persons acting or attempting to act in concert with them from further falsely designating the origin of these counterfeit products.

41. MRI suffered money damages as a result of Defendants' infringement in an amount not yet ascertained, but to be proven at the time of trial.

10

42. MRI is further entitled to recover damages, including attorney fees and costs and enhanced damages, it has suffered and will suffer, and any gains, profits, and advantages obtained by the Defendants as a result of their acts of infringement, alleged above. At present, the amount of such damages, fees, costs, gains, profits, and advantages cannot be fully ascertained by MRI, but will be proven at the time of trial.

## COUNT III
## TRAFFICKING IN GOODS BEARING COUNTERFEIT MARKS
## 15 U.S.C. §§ 1114(1) AND 1116

43. Plaintiff incorporates by reference and hereby reallages, as fully set forth herein, each of the preceding paragraphs of this Complaint.

44. Defendants' use of counterfeit MRI Marks on merchandise that is not genuine MRI product constitutes the knowing use of counterfeit marks in violation of § 32(1) of the Lanham Act, 15 U.S.C. § 1114(1) and § 1116(d). Unless enjoined, Defendants will continue to traffic in these goods thereby causing irreparable harm to Plaintiff.

## COUNT IV
## UNFAIR AND DECEPTIVE TRADE PRACTICES
## N.C. GEN. STAT. § 75-1.1

45. Plaintiff incorporates by reference and hereby reallages, as fully set forth herein, each of the preceding paragraphs of this Complaint.

46. Defendants' aforementioned trademark infringement, false designation of origin, and counterfeiting, as well as the facts and circumstances demonstrating Defendants' malicious and bad faith conduct and competition towards MRI, constitutes unfair, false, misleading, and deceptive acts and practices within the State of North Carolina.

47. Defendants' unfair, false, misleading, and deceptive acts and practices affect commerce and the consuming public in the State of North Carolina.

## PRAYER FOR RELIEF

WHEREFORE Plaintiff prays:

1. That this Court finds that the Defendants infringed upon MRI's federally registered and common law trademarks and trade dress;

2. That the Court find a substantial likelihood that Defendants will continue to infringe upon MRI's trademarks unless enjoined from doing so in the future;

3. That the Court grant a temporary restraining order and a preliminary and ultimately permanent injunction enjoining Defendants and each of their partners, officers, directors, associates, agents, servants, employees, and all others acting or attempting to act in concert with him, from directly or indirectly infringing the MRI Marks, or continuing to sell, market, offer, dispose of, license, transfer, display, advertise, reproduce, develop, or manufacture any works, products, or goods derived or copied from the MRI Marks, or any confusingly similar version of such trademarks, or to assist or participate in any such activity.

4. That the Court grant a temporary restraining order and a preliminary and ultimately permanent injunction, enjoining Defendants and each of their partners, officers, directors, associates, agents, servants, and employees, and all others acting, or attempting to act, in concert with him, from taking any action which may confuse MRI's customers, the public, or any other customers about the authenticity, sponsorship, or source of Defendants' goods, or about MRI being the source of goods or products that are not licensed or authorized by MRI, or otherwise infringing on MRI's trademark rights.

5. That the Defendants, their officers, agents, servants, employees, and all other persons in active concert, privity, or in participation with him, be ordered and enjoined to return to MRI any and all unauthorized copies, facsimiles, duplicates, or confusingly similar versions

12

and any goods or documents bearing unauthorized copies, facsimiles, or duplicates, of the MRI Marks, that are in their possession, custody, or control.

6. That this Court grant a temporary restraining order, a preliminary injunction, and ultimately a permanent injunction enjoining Defendants from committing further acts of unfair competition and/or false or deceptive advertising.

7. That this Court grant MRI an ex parte Order providing for the seizure and impoundment of counterfeit goods bearing any or all of the MRI Marks, and for the seizure of documents and information evidencing the acquisition, purchases, sales, or distribution of such counterfeits.

8. That the Court enter judgment in favor of MRI and against Defendants for all of MRI's compensatory damages, including but not limited to, damages based upon the Defendants acts of trademark infringement under the Lanham Act 14 U.S.C. §1051, et seq., and all other causes of action herein, and require the Defendants to account to MRI and disgorge all profits that the Defendants derived from the sale of counterfeit or infringing merchandise, and require the Defendants to pay MRI all damages that MRI sustained by reason of the Defendants' action for all causes of action herein, including enhanced damages for willful infringement, and that such amounts be trebled.

9. That the Court enter judgment in favor of MRI and against Defendants for statutory damages of up to $1,000,000 per type of goods sold by Defendants, or such other amount as the Court considers just.

10. That judgment be entered whereby all gains, profits, and advantages derived by the Defendants from their acts of infringement be deemed to be held in constructive trust for the benefit of MRI.

13

11. The Court order Defendants to publish for a period of not less than twelve (12) months corrective advertising in all media, to include each Internet URL, in which counterfeit and infringing products had been marketed and explaining to consumers that Defendants' products were counterfeit and were not and are not affiliated with or endorsed by Plaintiff and explaining that Defendants' counterfeit products were of an inferior and potentially harmful composition, and such other disclaimers and warnings as become necessary and as learned through the course of discovery.

12. The Court order Defendants to send written notification to all of their past and current customers explaining to them that their counterfeit products were not and are not manufactured by or affiliated with Plaintiff's and explaining that Defendants' counterfeit products were of an inferior and potentially harmful composition, and such other disclaimers and warnings as become necessary and as learned through the course of discovery.

13. That the Court grant any and all relief to which MRI may be entitled pursuant to state law including, but not limited to, state common law and N.C. Gen. Stat. §§ 75-16, 75-16.1.

14. For prejudgment interest as authorized by law.

15. That this Court award MRI the costs of this action and their reasonable attorney fees for Defendants' willful infringement.

16. That this Court grants such other and further relief as it should deem just under the circumstances.

### JURY DEMAND

Plaintiff hereby demands a trial by jury on all issues so triable.

Respectfully submitted,

**Coats & Bennett, P.L.L.C.**
*L.R. 83.1 Counsel*

By: _____
Anthony J. Biller (NC Bar No. 24,117)
Larry L. Coats (NC Bar No. 5,547)
Rebecca Crandall (NC Bar No. 32,637)
1400 Crescent Green, Suite 300
Cary, NC 27511
Tel: 919-854-1844
Fax: 919-854-2084

**Cooley Godward LLP**
*Of Counsel*

By: _____
w/permiss Andrew Hartman (CO Bar No. 32503)
Carolyn Juarez (CO Bar No. 36050)
380 Interlocken Crescent, Suite 900
Broomfield, CO 80021
Tel: 720-566-4000
Fax: 720-566-4099

Grant Fondo CA Bar No. 181530)
Emily Burns (CA Bar No. 228123)
5 Palo Alto Square, 3000 El Camino Real
Palo Alto, CA 94306
Tel: 650-843-5000
Fax: 650-857-0663

*Attorneys for Plaintiff*

15